T.C. Memo 2018-114

UNITED STATES TAX COURT

INMAN PARTNERS, RCB INVESTMENTS, LLC, TAX MATTERS PARTNER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15953-06.                          Filed July 23, 2018.

Kyle R. Coleman, for petitioner.

Thomas Lee Fenner, for respondent.

MEMORANDUM OPINION

HOLMES, Judge:  The taxpayers in this case agreed to extend the statute of limitations for any income tax due on any return made by or for them "for the period(s) ended December 31, 2000."  Each of the taxpayers was also a partner in a partnership that had a tax year that ended on December 19, 2000.  Does an

[*2] extension for individual returns for a year that ends on December 31 include any partnership items from partnerships whose tax years ended less than a month before? In WHO515 Inv. Partners v. Commissioner, T.C. Memo. 2012-316, appeal filed (D.C. Cir. Apr. 6, 2018), we said it did. The taxpayers here admit that they would lose under WHO515, but point out it was only a Memorandum Opinion and ask us to rethink our reasoning.

Background

This is a Son-of-BOSS case--perhaps the last of its kind--in which the parties agree about all of the Commissioner's adjustments in the notice of final partnership administrative adjustment (FPAA).[1] In 2000 one of the partners, Raymond Craig Brubaker--a name long associated with Son-of-BOSS deals[2]-- collaborated with two high-earning colleagues from Deutsche Bank to shelter their income from federal taxes. The deal took advantage of a strained reading of the

_____

[1] Son-of-BOSS? FPAA? We refer interested readers to opinions that discuss these deals and TEFRA terminology at length. See, e.g., BCP Trading & Invs., LLC v. Commissioner, T.C. Memo. 2017-151; 436, Ltd. v. Commissioner, T.C. Memo. 2015-28; 6611, Ltd. v. Commissioner, T.C. Memo. 2013-49.

[2] See Indictment, United States v. Daugerdas, No. 1:09-CR-00581-WHP (S.D.N.Y. June 9, 2009), ECF No. 1 (Brubaker and others indicted for tax-fraud conspiracy involving tax shelters). But see Judgment of Acquittal, United States v. Brubaker, No. 1:09-CR-00581-WHP-6 (S.D.N.Y. May 25, 2011), ECF No. 396 (Brubaker acquitted after jury trial).

**[\*3]** partnership-tax rules to create artificial tax losses, and the parties now agree that the partnership involved was a sham.

Only some of the deal's details need be discussed. Brubaker and his colleagues--Todd Clendening and Jeffrey Rupp--each formed limited liability companies (LLCs). The LLCs, which were disregarded for federal income-tax purposes,[3] owned the initial partnership interests in Inman Partners when it was formed under Texas law on October 19, 2000. On December 18, 2000, the LLCs transferred their Inman Partners interests to S corporations[4] that Brubaker, Clendening, and Rupp also owned. And just one day later, on December 19, the S corporations liquidated Inman Partners--an important step in Son-of-BOSS deals because partnership assets are then distributed and sold, which supposedly produces tremendous artificial losses.

---

[3] This means that the entities themselves were ignored for federal income-tax purposes, see sec. 301.7701-3(b)(1)(ii), Proced. & Admin. Regs., and the owners were taxed as sole proprietors under the Code with any income or loss of the LLCs reported on their returns, see 301.7701-2(a), Proced. & Admin. Regs. (All section references are to the Internal Revenue Code and regulations in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless we say otherwise.)

[4] If a business meets the requirements of section 1361, it may elect to be treated as an "S corporation" and generally avoid corporate tax. Secs. 1362(a), 1363(a). An S corporation's income and losses, like a partnership's, flow through to its shareholders, who then pay income tax. See sec. 1363(b).

**[\*4]**  These tax losses were soon reported.  On February 18, 2001, Inman Partners filed its initial *and* final Form 1065, U.S. Return of Partnership Income, for its short tax year ended December 19, 2000.  Brubaker and Clendening filed their S corporations' 2000 Forms 1120S, U.S. Income Tax Return for an S Corporation, in the same month, and Rupp filed his S corporation's 2000 Form 1120S in March 2001.  The S corporations all reported losses from the sale of assets that Inman Partners distributed, and those losses flowed through to Brubaker, Clendening, and Rupp.  Brubaker and Clendening reported these losses on their tax returns for 2000, which they each filed jointly with their wives on April 15, 2001; Rupp reported his on a joint return that he filed with his wife in July.

The Commissioner saw something he didn't like on the returns, but IRS examinations often take a long time.  So he asked the partners to sign consents to extend the statute of limitations for their tax years ending December 31, 2000.  (Notice the use of a specific date here, rather than a formula like "their 2000 tax year.")  The partners were in tax trouble at least in part because of the flowthrough losses from a partnership, so the Commissioner chose to use Forms 872-I, Consent to Extend the Time to Assess Tax as Well as Tax Attributable to Items of a Partnership.  There was another round of extensions as the audits dragged on.  Here's a summary:

| [*5] Taxpayers | Agreement | Date executed | New deadline |
|---|---|---|---|
| Brubakers | No. 1 | 3/30/2004 | 6/30/2005 |
| Brubakers | No. 2 | 6/21/2005 | 6/30/2006 |
| Clendenings | No. 1 | 3/30/2004 | 6/30/2005 |
| Clendenings | No. 2 | 6/21/2005 | 6/30/2006 |
| Rupps | No. 1 | 4/1/2004 | 6/30/2005 |
| Rupps | No. 2 | 6/21/2005 | 6/30/2006 |

All the Forms 872-I that the Commissioner secured here were the same. They all included broad language to make clear that the extensions included assessments attributable to partnership items:

> Without otherwise limiting the applicability of this agreement, this agreement also extends the period of limitations for assessing any tax (including additions to tax and interest) attributable to any partnership items (see section 6231(a)(3)), affected items (see section 6231(a)(5)), computational adjustments (see section 6231(a)(6)), and partnership items converted to nonpartnership items (see section 6231(b)).

These forms also included the language that the parties would later fight about: The partners and the Commissioner agreed that "[i]ncome tax due on any return(s) made by or for the * * * taxpayer(s) for the period(s) ended December 31, 2000 may be assessed at any time on or before" June 30, 2005 (for the first round) and June 30, 2006 (for the second).

**[\*6]**  The Commissioner finished his audit and issued an FPAA for Inman

Partners on May 18, 2006--a little more than one month before the partners'

extended statutes of limitations on assessment would expire.  The Commissioner

determined in the FPAA that Inman Partners was a sham, so he adjusted all

partnership items to zero and asserted accuracy-related penalties for the resulting

underpayments.  Inman Partners' tax matters partner didn't agree and timely

petitioned our Court for readjustment of partnership items.[5]  The parties settled all

but the statute-of-limitations issue and ultimately submitted it for decision under

Rule 122.

Discussion

I.      Statutory Background

Partnerships don't pay tax.  Sec. 701.  But partners in a partnership are

required to include on their own tax returns their distributive shares of the

partnership's income, gain, loss, deduction, or credit.  Sec. 702(a).  Because

partnerships will sometimes have tax years that differ from those of their partners,

subchapter K provides a timing rule:

---

[5] Because Inman Partners was dissolved on December 19, 2000--almost six years before the petition was filed--this case is appealable to the D.C. Circuit.  See sec. 7482(b)(1) (flush language); see also 106 Ltd. v. Commissioner, 684 F.3d 84, 89 n.9 (D.C. Cir. 2012), aff'g 136 T.C. 67 (2011).

**[*7]**   In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 * * * with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership *for any taxable year of the partnership ending within or with the taxable year of the partner*.

Sec. 706(a) (emphasis added).  Inman Partners' short tax year ended on December 19, 2000--*within* each of its partners' tax years, which all ended on December 31, 2000.  That means that the partners had to include their distributive shares of Inman Partners' income, gain, loss, deduction, or credit for its final tax year on their 2000 tax returns.  To tie this to the disputed language in the IRS forms, the partners had to use these partnership numbers to report the "income tax due" on their returns for the calendar year 2000.

The partners here did just that.  The Commissioner wasn't satisfied with how they reported their incomes, however, so he made adjustments to Inman Partners' partnership items.  This is where another timing issue comes up:  Section 6501(a) provides the general rule that any tax deficiency "shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."  That statute of limitations is for the "return required to be filed by the taxpayer (and

[*8] does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." Id.

There are exceptions to section 6501(a)'s general three-year statute of limitations. Among those, a taxpayer and the Commissioner may, before the three years expires, consent in writing to extend the statute so that "tax may be assessed at any time prior to the expiration of the period agreed upon." Sec. 6501(c)(4)(A). The parties can then extend that deadline if they put it in writing before the extended statute expires. Id. The rule for extending the statute of limitations if partnership items are involved is a bit different: The extension must "expressly provide[] that such agreement applies to tax attributable to partnership items." Sec. 6229(b)(3); see sec. 6501(n)(2).

Inman Partners filed its partnership return on February 18, 2001, but it wasn't actually due to be filed until April 15, 2001. See sec. 6072(a). Brubaker and Clendening filed their individual returns on April 15, 2001, and Rupp filed his on July 23, 2001. The three-year statute of limitations would have expired on April 15, 2004, for Brubaker and Clendening; and on July 23, 2004, for Rupp. See secs. 6229(a), 6501(a). The Commissioner didn't issue the FPAA until May 18, 2006--two years too late, it seems. But the Commissioner did get two Form 872-I extension agreements from each partner. Were those agreements effective?

[*9] II.      <u>Keeping the Statute of Limitations Open</u>

Let's consider the agreements' language again. In each of the Forms 872-I, the partners and the Commissioner agreed that "[i]ncome tax due on any return(s) made by or for the * * * taxpayer(s) for the period(s) ended December 31, 2000 may be assessed at any time on or before" June 30, 2005 (in the first instance) and June 30, 2006 (in the second). The Commissioner and each partner signed the first and second Forms 872-I before the statutes would have otherwise expired and those forms specifically referred to partnership and affected items.

The partners don't doubt the agreements' timeliness, but they do question their coverage of these partnership items. Recall that any agreement under section 6501(c)(4) applies for partnership and affected items "only if the agreement expressly provides that * * * [it] applies to tax attributable to partnership items." Sec. 6229(b)(3). The Forms 872-I seem to do so:

> Without otherwise limiting the applicability of this agreement, this agreement *also extends the period of limitations for assessing any tax (including additions to tax and interest) attributable to any partnership items* (see section 6231(a)(3)), affected items (see section 6231(a)(5)), computational adjustments (see section 6231(a)(6)), and partnership items converted to nonpartnership items (see section 6231(b)). [Emphasis added.]

But did the agreements here apply to Inman Partners' partnership and affected items for its short tax year ended December 19, 2000?

[*10] <u>WHO515</u>--a case with nearly identical facts--seems to provide the answer. A couple owned indirect partnership interests in a partnership that was liquidated on December 8, 2000. <u>Id.</u> at *2-*4. On July 24, 2001, the partnership filed its short-year return for the tax year ended December 8, 2000; the couple filed their joint return for the 2000 tax year on August 16, 2001. <u>Id.</u> at *4. By April 22, 2004, the couple and the Commissioner had each signed a Form 872-I in which they agreed to extend to June 30, 2005 the deadline to assess tax for "any return(s) made by or for the * * * taxpayer(s) for the period(s) ended December 31, 2000." <u>Id.</u> Same as here, the Form 872-I used the language we quoted above. <u>See</u> <u>id.</u> at *4-*5. Within the extended statute of limitations, the Commissioner issued an FPAA for WHO515. <u>Id.</u> at *5. The couple argued that the Form 872-I--which was for the tax period ended December 31, 2000--couldn't extend the statute of limitations for tax attributable to partnership items from a partnership with a tax year ended December 8, 2000. <u>Id.</u> at *10. We had to figure out if the couple was right.

We held that they weren't. The Form 872-I extended section 6501(a)'s deadline to assess tax against the couple "attributable to *any* partnership items, affected items, computational adjustments, and partnership items converted into nonpartnership items." <u>WHO515</u>, at *11 (citing section 6229(b)(3) and <u>Ginsburg</u>

[*11] v. Commissioner, 127 T.C. 75, 89 (2006)). The Commissioner could assess tax attributable to items from WHO515's tax year that ended December 8, 2000, because sections 702(a) and 706(a) required the couple to report any income tax due on WHO515's partnership items for that year on their own 2000 return--since WHO515's tax year ended *within* the couple's tax year. WHO515, at *11. Thus, we concluded, the couple had "expressly consented in * * * [their] Form 872-I to respondent's assessing on or before June 30, 2005, any tax of theirs for their taxable year 2000 attributable to *any* partnership items * * * [from] WHO515 for its taxable year ended December 8, 2000." Id. at *11-*12.

There is no difference between this case and WHO515, and the partners acknowledge that. But they argue we got it wrong in WHO515 when we failed to properly consider the term "by or for" in the Form 872-I. The partners argue that WHO515 grossly misreads the phrase "any return(s) made by or for * * * taxpayer(s) for the period(s) ended December 31, 2000," in the Form 872-I if the phrase also includes a return for a taxpayer for a period that ended *before* December 31--e.g., a partnership return with a tax year that ended December 19, 2000. But the partners here are missing a key point: The Forms 872-I may have extended the statute only for the *individual returns* with tax years that ended December 31, 2000, but sections 702(a) and 706(a) mean those individual returns

[*12] had to report any income tax due to partnership items from *any* of their partnerships whose tax year ended in 2000 on or before December 31. The key point to understand is that the IRS forms don't extend the statute for *returns* but for the assessment of income tax due on those returns. The Code required the partners to report their Inman Partners' partnership items on their individual returns for their December 31, 2000 tax years, and the partners each consented twice to extend the statute for assessing the income tax due on those returns. Because the partners conceded everything else,

Decision will be entered for respondent.